OPINION
{¶ 1} Appellant, Michael J. Cefaratti ("Michael"), appeals from the judgment of the Lake County Common Pleas Court, Domestic Relations Division, which granted appellee, Lorraine A. Cefaratti's ("Lorraine"), motion for relief from judgment pursuant to Civ.R. 60(B)(3).
 {¶ 2} Lorraine and Michael were married on June 12, 1982, and three children were born of the marriage; Nicole, age 17, Danielle, age 13, and Michael, age 11. On April 22, 2002, Michael and Lorraine entered into a separation agreement and shared parenting plan. On July 8, 2002, the marriage of Michael and Lorraine was terminated by a decree of dissolution. The decree incorporated the separation agreement, and shared parenting plan. Michael and Lorraine were both unrepresented by counsel and they proceeded pro se.
 {¶ 3} On March 18, 2003, Lorraine filed a motion for relief from judgment pursuant to Civ.R. 60(B)(3), seeking to vacate the divorce judgment. Specifically, the motion alleged that Michael committed fraud, coercion, duress and misrepresentation, and that the separation agreement was not fair, just, and equitable. The trial court conducted a hearing on the motion, beginning March 22, 2004. By decision and judgment entry filed on April 30, 2004, the trial court granted Lorraine's Civ.R. 60(B) motion and ordered the decree of dissolution, incorporating the separation agreement and shared parenting plan, "vacated and held for naught." The trial court found that Lorraine had proven, by clear and convincing evidence, that she was entitled to relief from judgment pursuant to Civ.R. 60(B)(3), based upon undue influence.
 {¶ 4} Michael filed a timely notice of appeal raising four assignments of error for our review:
 {¶ 5} "[1.] The trial court abused its discretion on granting appellee relief from judgment.
 {¶ 6} "[2.] The motion is untimely filed because Lorraine Cefaratti knew of the existence of the financial assets and right to alimony which she now complains.
 {¶ 7} "[3.] There is no undue influence where the parties are separated and know of their rights.
 {¶ 8} "[4.] The separation agreement is equitable."
 {¶ 9} In his first assignment of error, Michael contends that the trial court abused its discretion in granting Lorraine's motion to vacate the dissolution decree. In his second assignment of error, Michael argues that Lorraine's motion was untimely filed. In his third assignment of error, Michael alleges that the trial court committed error in its finding of undue influence. Because Michael's first, second, and third assignments of error are interrelated, we shall address them in a consolidated manner.
 {¶ 10} It is well-settled that in order to prevail on a motion for relief from judgment pursuant to Civ.R. 60(B), the movant must demonstrate the following: (1) a meritorious claim or defense if relief is granted; (2) entitlement to the relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion. GTE Automatic Elec., Inc. v. ARCIndustries, Inc. (1976), 47 Ohio St. 2d 146, paragraph two of the syllabus.
 {¶ 11} The decision to grant or deny a motion for relief from judgment is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Griffey v.Rajan (1987), 33 Ohio St.3d 75, 77. An abuse of discretion connotes more than an error of law or of judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 12} Civ.R. 60(B) provides in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; * * * The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. * * *"
 {¶ 13} A motion for relief under 60(B) must be timely filed. "While a party may have a possible right to file a motion to vacate judgment up to one year after the entry of judgment, the motion is also subject to the `reasonable time' provision."Adomeit v. Baltimore (1974), 39 Ohio App.2d 97, 106. The movant has the burden of demonstrating that the motion is filed within a reasonable time. Fouts v. Weiss-Carson (1991),77 Ohio App.3d 563, 566.
 {¶ 14} In Ohio, courts have held that a decree of dissolution is founded on an agreement of the parties. "`If consent or mutuality did not exist when the parties entered into the separation agreement because of fraud or material mistake or misrepresentation, then there was no agreement upon which the dissolution decree could have been based. This lack of mutuality undermines the integrity of the dissolution proceeding and may constitute sufficient grounds to set aside the decree under Civ.R. 60(B).'" Nardecchia v. Nardecchia, 155 Ohio App.3d 40,2003-Ohio-5410, at 13, quoting, In re Whitman (1998),81 Ohio St.3d 239, 241, 1998-Ohio-466.
 {¶ 15} While a separation agreement "* * * is generally required to be fair and equitable to the wife (who was once deemed to be the party in need of protection * * *), where the parties have dealt at arms length with each other rather than in a confidential relationship, the test is whether the agreement is the product of fraud, duress or undue influence upon the party in the weaker bargaining position." DiPietro v. DiPietro (1983),10 Ohio App.3d 44, 47.
 {¶ 16} In Ross v. Barker (1995), 101 Ohio App.3d 611, 618, the court noted that: "[u]ndue influence has been defined as `any improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely,'" Id., quoting Marich v. Knox Cty. Dept.of Human Serv. (1989), 45 Ohio St.3d 163.
 {¶ 17} In the case sub judice, this court has carefully reviewed the record and it is our view that there was no abuse on the part of the trial court in granting Lorraine's motion for relief from judgment pursuant to Civ.R. 60(B)(3).
 {¶ 18} First, Michael argues that Lorraine's motion was untimely filed. Specifically, Michael asserts that Lorraine had knowledge of the existence of his pension and stock option plan prior to the dissolution hearing held on July 8, 2002. However, Lorraine did not file her motion for relief, until eight months later, on March 18, 2003. Thus, he contends that the timeliness of the motion was not reasonable. Because the grounds upon which relief was sought in this case were "fraud and/or misrepresentation," the motion was required to be filed within a reasonable time, not to exceed one year. Civ.R. 60(B).
 {¶ 19} The trial court found that "[Lorraine's] motion was filed within a reasonable time. In its judgment entry the trial court stated "* * * the motion was filed within a reasonable time of wife's discovery [husband] no longer had any intention to reconcile with her."
 {¶ 20} In determining reasonableness, "the trial court * * * is in a far better position to weigh all the facts and circumstances, including the knowledge and opportunities available to appellants and the prejudice, if any, to appellee that would result from vacating the final order in his favor."Whitt v. Bennett (1992), 82 Ohio App.3d 792, 798. The court, therefore, must not substitute its own judgment for that of the trial court.
 {¶ 21} We find that the trial court did not abuse its discretion in determining that the motion for relief filed approximately eight months after the date of judgment was timely pursuant to Civ.R. 60(B).
 {¶ 22} Next, we address the trial court's findings of undue influence. A trial court's approval of a separation agreement and incorporation of the agreement into a divorce decree is reviewed for abuse of discretion. Schneider v. Schneider (1996),110 Ohio App.3d 487, 491. Mutual consent of the parties distinguishes dissolution from divorce. An integral part of dissolution proceedings is the separation agreement, agreed to by both parties, which is a binding contract between them. In reCoogan, 11th Dist. No. 99-P-0093, 2000 Ohio App. LEXIS 6125.
 {¶ 23} As in any other contract, a separation agreement is enforceable only if the parties intend to contract on its essential terms, including its subject matter, and intend to be bound by its terms. Whitman. A separation agreement procured by fraud, duress, overreaching, or undue influence may be vacated by the court as it is not a valid, binding contract. Whitman, at 241. See also, McGowan v. McGowan, 11th Dist. No. 2003-G-2500, 2004-Ohio-2786.
 {¶ 24} In its judgment entry, the trial court found "the separation agreement is a product of [Michael's] undue influence exerted upon [Lorraine]." Specifically, the trial court found the elements of undue influence as enunciated in DiPietro. The findings of undue influence are significant in relation to a separation agreement. Undue influence, fraud, or duress may result in setting aside a settlement agreement. DiPietro. In order to prove undue influence, Lorraine was required to show (1) she was susceptible to influence, (2) that Michael had the opportunity to exert the influence, (3) that improper influence was in fact exerted or attempted, and (4) events or results showing the effect of such influence. DiPietro at 46. To support a claim of undue influence, "it must appear that the free agency of the person is destroyed and that another person's will has been substituted in place of that free agency." Kawalec v.Kawalec (May 26, 1989), 11th Dist. No. 1462, 1989 Ohio App. LEXIS 1936, at 8, citing Tallmadge v. Robinson (1952),158 Ohio St. 333.
 {¶ 25} In the case at bar, the trial court found the following facts. Michael moved out of the marital residence in 2001. Although Lorraine was employed, the household bills were paid from money directly deposited by Michael. Michael stated he had no intention of seeking divorce until March 2002. Michael testified that he researched divorce proceedings and had the separation agreement prepared at his direction. Lorraine did not have legal counsel during this time. The trial court noted that a draft of the agreement was presented to Lorraine at the marital home without any advance notice. Lorraine became upset and Michael left with the papers. A week later, Michael and Lorraine met at a Baker's Square Restaurant to review the agreement. While Lorraine testified that Michael read the agreement to her line by line, he did not provide her a copy. Testimony further established that Lorraine was extremely distraught after Michael brought the separation agreement and shared parenting plan to her during their initial "separation" period.
 {¶ 26} During this period, Lorraine lost weight, and was extremely upset and distracted at work. Testimony from friends and family indicated that they were concerned about Lorraine's health and emotional well being. Throughout the spring of 2002, Michael regularly spoke with Lorraine about reconciliation, and specifically encouraged Lorraine not to seek legal advice. Michael told Lorraine that alimony no longer existed in Ohio. Michael, himself, drove Lorraine to a bank to sign the separation agreement and shared parenting plan. Further, Michael drove Lorraine to court on the dissolution hearing date. There was testimony that Michael represented intentions of a fustier reconciliation with Lorraine, and that the dissolution proceedings represented a fresh start for their marriage, buy new rings and have a new marriage ceremony. Testimony further established that Lorraine told a co-worker and her sister, that the dissolution was the only way to save her marriage to Michael.
 {¶ 27} Although the record reveals that Lorraine was emotionally distraught during the time leading up to the dissolution, the record fails to support a finding that Lorraine's mental status rose to a level where influence exerted over her by Michael in execution of the separation agreement so overpowered her that it destroyed her free will. Id. Thus, the court erred in its findings of undue influence. However, the resulting error is harmless, as the evidence supports a finding of fraud in the inducement.
 {¶ 28} The terms of undue influence and fraud are closely associated and frequently used synonymously. The term fraud denotes surprise, trick, cunning dissembling, and other unfair ways that are used to cheat another. Ross, at 618. To set aside a separation agreement on the ground that one of the parties was induced to sign the agreement as a result of the fraudulent acts of the other party, the essential elements of fraud must be established. Miller v. Knight (1961), 115 Ohio App. 485. Fraud in the inducement arises when a party is induced to enter into a contract or agreement through fraud or misrepresentation, and the fraud relates not to the nature or purport of the agreement, but to the facts inducing its execution. Haller v.Borror Corp. (1990), 50 Ohio St.3d 10, 14. To demonstrate fraud in the inducement, the plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to his or her detriment. ABM Farms,Inc. v. Woods (1998), 81 Ohio St.3d 498, 502; Colburn v. BaierRealty Auctioneers, 11th Dist. No. 2002-T-0161,2003-Ohio-6694, at ¶ 18.
 {¶ 29} There is competent, credible evidence from which the court could find fraud in the inducement occurred in the instant case. Michael made representations to Lorraine regarding the nonexistence of alimony, encouraged Lorraine not to retain legal counsel in the dissolution proceedings, and told her that a future reconciliation would occur after the dissolution of their marriage. Testimony established that Lorraine relied upon Michael's representations when she agreed to enter into the separation agreement, and on the day of the dissolution hearing.
 {¶ 30} Further, the separation agreement was prepared solely by Michael and resulted in a clear undue advantage over Lorraine. The court found that Michael's income was twelve times that of Lorraine and that no spousal support was awarded, "notwithstanding a long term marriage." Although testimony by both Lorraine and Michael established that neither of them had information regarding the value of Michael's retirement plan or stock options, the court properly noted that Michael had a duty to disclose to Lorraine all marital assets and liabilities. The child support obligation of Michael in the shared parenting plan reflected a deviation of almost $7,000, to reduce his financial obligation to his three minor children. Although pursuant to the separation agreement Lorraine was granted the ability to reside in the marital home, until a later date, her earnable income was only $12,000 annually. The separation agreement required Lorraine to pay one-half the $800 monthly mortgage, real-estate taxes, and repairs over $100. The agreement also provided that when the home was sold, the proceeds were to be divided equally between Lorraine and Michael. The trial court also found that Michael was the driving force behind the preparation of the separation agreement and dissolution proceeding.
 {¶ 31} The totality of the evidence shows that Michael procured a separation agreement that was clearly beneficial to his own interests at the expense of Lorraine. This document was signed by Lorraine without the benefit of legal representation, and following Michael's efforts to discourage her from obtaining such representation.
 {¶ 32} These circumstances, in addition to evidence that certain property was not fully disclosed or valued, and that Michael made erroneous representations to Lorraine regarding her right to spousal support, under the agreement, lead us to conclude that there was competent, credible evidence before the trial court to support a finding of fraud in the inducement. For the foregoing reason, the trial court did not abuse its discretion in granting Lorraine's Civ.R. 60(B) motion to vacate the decree of dissolution. Thus, Michael's first three assignments of error are without merit.
 {¶ 33} Under his fourth assignment of error, Michael asserts that the court erred in finding that the separation agreement was inequitable. Our disposition of Michael's first three assignments of error renders this assignment of error moot. Further, an agreement brought about by fraud is inherently inequitable.
 {¶ 34} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.
Ford, P.J., O'Neill, J., concur.