OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Plaintiff-Appellant, Rhonda Kay Maury, appeals the decision of the Carroll County Court of Common Pleas that granted a divorce between her and Defendant-Appellee, Michael S. Maury. On appeal, Rhonda argues that the trial court erred when it did not grant her motion to set aside a settlement agreement between the parties and that the trial court should have held an evidentiary hearing on her motion to set aside that agreement.
 {¶ 2} There is not any evidence in the record at this time which would support Rhonda's argument that the settlement agreement was procured by duress, undue influence, or fraud, so we cannot positively conclude that the trial court should have set aside the settlement agreement. However, Rhonda did raise a legitimate dispute regarding whether there was undue influence and/or fraud in the procurement of the settlement agreement. Accordingly, the trial court erred by not holding an evidentiary hearing to resolve this dispute before entering a final judgment in the case.
 {¶ 3} For these reasons, the trial court's decision is reversed and this case is remanded for further proceedings.
 Facts {¶ 4} On October 27, 2005, Rhonda filed a complaint to divorce her husband, Michael. Michael counterclaimed for divorce and the case was set for trial on July 19, 2006. The parties spent the morning on that day negotiating a settlement agreement. In the afternoon, they appeared before the court and read the agreement into the record. However, Rhonda's counsel indicated that she might not agree to the proposed settlement. Upon being questioned, Rhonda indicated that she was unhappy with many terms in the settlement agreement, but that she had a strong desire for the marriage to end. After questioning, Rhonda indicated that she was rejecting her counsel's advice and not agreeing to the proposed settlement. The trial court indicated that it would continue the case, but that a new trial date would probably be sometime in 2007. At this point, Rhonda indicated that she changed her mind and would agree to the proposed settlement.
 {¶ 5} On August 31, 2006, before the trial court had entered a final divorce *Page 2 
decree, Rhonda moved to set aside the settlement agreement and requested an oral hearing on the motion. The trial court never held such a hearing and entered a final judgment of divorce on September 29, 2006. Rhonda moved for a new trial and moved again to have the settlement agreement set aside. She then appealed the trial court's judgment. We granted a limited remand so the trial court could rule on the post-judgment motions and allowed Rhonda to amend her notice of appeal after those motions were denied.
 Court's Adoption of Settlement Agreement {¶ 6} In her first three of four assignments of error, Rhonda argues:
 {¶ 7} "The trial court committed an error of law and an abuse of discretion when the trial court approved a judgment entry which incorporated a separation agreement which purported to contain the terms of an in court settlement when the trial court was aware that Plaintiff/Appellant opposed the filing because Plaintiff/Appellant claimed she entered into the agreement under duress, undue influence and based upon fraud committed by the Defendant/Appellee." (Emphasis sic).
 {¶ 8} "The trial court committed an error of law and an abuse of discretion when it refused to grant Plaintiff/Appellant a new trial with full knowledge that Plaintiff/Appellant entered into the court settlement under duress, undue influence and mistake of fact based upon fraud committed by the Defendant/Appellee."
 {¶ 9} "The trial court committed an abuse of discretion and an error of law when it approved an in court settlement with full knowledge that no meeting of the minds existed and with full knowledge that Plaintiff/Appellant was not competent to approve the settlement."
 {¶ 10} According to Rhonda, the trial court should have realized, based solely on what transpired on the record, that she only agreed to the settlement because of duress, undue influence, and fraud. Therefore, she contends that the agreement should not have formed the basis of the trial court's divorce decree.
 {¶ 11} Rhonda entered into the settlement agreement in the trial court's presence. Where parties enter into a settlement agreement in the presence of the trial court, such *Page 3 
an agreement constitutes a binding contract and neither a change of heart nor poor legal advice is a ground to set aside such a settlement agreement. Spercel v. Sterling Industries, Inc. (1972),31 Ohio St.2d 36, paragraph one of the syllabus; Walther v. Walther (1995),102 Ohio App.3d 378, 383. "In the absence of fraud, duress, overreaching or undue influence, or of a factual dispute over the existence of terms in the agreement, the court may adopt the settlement as its judgment."Walther at 383. "The mere stress of a divorce proceeding * * * does not constitute duress or undue influence." Dubinsky v. Dubinsky (Mar. 9, 1995), 8th Dist. Nos. 66439, 66440, at 7.
 {¶ 12} Rhonda argues she was acting under duress when she entered into the settlement agreement because "the court, her counsel, Defendant/Appellee and his counsel" all wore Rhonda down until she agreed to a settlement with which she did not actually agree. Rhonda cites Cefaratti v. Cefaratti, 11th Dist. No. 2004-L-091, 2005-Ohio-6895, as an example of another case where a court set aside a settlement agreement because of duress. However, the issues in Cefaratti dealt with undue influence, not duress, so the case is irrelevant to the issue of duress.
 {¶ 13} "To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." (Emphasis added) Blodgett v.Blodgett (1990), 49 Ohio St.3d 243, 246. In this case, there is nothing in the record demonstrating that Michael coerced Rhonda into entering into the settlement agreement. Other than a vague statement that she felt pressured by the situation, which included Michael, to settle the case, there are no allegations in the record that Michael did anything to coerce Rhonda to enter into the settlement agreement. Instead, she argues her counsel and the court forced her into this agreement. Since there is no evidence of coercion by Michael, the other party to the contract, Rhonda cannot avoid the settlement agreement because of duress.
 {¶ 14} Rhonda next argues that she entered into the settlement agreement due to undue influence because she felt she "had no alternative but to proceed with settlement." The elements of undue influence are 1) a susceptible party, 2) another's opportunity to *Page 4 
influence the susceptible party, 3) the actual or attempted imposition of improper influence, and 4) a result showing the effect of the improper influence. West v. Henry (1962), 173 Ohio St. 498, 501.
 {¶ 15} Cefaratti offers an example of facts which an appellate court has found do not amount to undue influence. In Cefaratti, the husband moved out of the marital home in 2001, but still paid the household bills. According to the husband's testimony, he had no intention of seeking a divorce until March 2002, when he did some legal research and had a separation agreement prepared at his direction. The husband then presented a copy of the agreement to the wife. She became upset, but the husband presented the agreement to her again a week later. At that time, he read the agreement to her, but did not provide her with a copy. The wife became "extremely distraught" after this meeting and she began to lose weight and be distracted at work.
 {¶ 16} Throughout the spring, the husband spoke regularly with the wife and encouraged her not to seek legal advice. He told her alimony no longer existed in Ohio, drove her to a bank to have the agreement signed, and drove her to the dissolution hearing. At that hearing there was testimony that the husband had represented intentions of going through a dissolution so the couple could have a fresh start with their marriage and the wife believed that the dissolution was the only way to save her marriage. The trial court found that the wife's agreement to the settlement was because of the husband's undue influence over the wife.
 {¶ 17} The appellate court found that the trial court erred when reaching this conclusion. Id. at ¶ 27. According to the Eleventh District, "the record fails to support a finding that [the wife]'s mental status rose to a level where influence exerted over her by [the husband] in execution of the separation agreement so overpowered her that it destroyed her free will. Id.
 {¶ 18} Ingle v. Ingle, 2d Dist. No. 2005CA110, 2006-Ohio-3749, offers another example of when a court rejected a claim of undue influence in a divorce setting. In Ingle, a husband was not sure whether he wanted to agree to the settlement discussed by the parties to a contested divorce. The magistrate told him that he may end up with a less *Page 5 
desirable result than the agreed settlement should the court rule on the matter and that the court could order that he pay the wife's attorney's fees if he rejected the settlement in bad faith. His attorney then threatened to withdraw his representation if the husband repudiated what his counsel believed to be the parties' agreed upon settlement.
 {¶ 19} The Second District affirmed a decision finding that the husband was not unduly influenced into entering into the settlement agreement because he was not susceptible to such influence. "He was represented by an experienced and highly competent lawyer who specializes in domestic relations law. There was no evidence that appellant was not competent to enter into a settlement of his contested divorce proceeding." Id. at ¶ 52.
 {¶ 20} In this case, the matter was set for trial on July 19, 2006. On that date, the parties took the morning to engage in settlement negotiations. That afternoon, they presented the court with a settlement agreement. However, Rhonda's attorney told the court that he was "not sure whether or not she's going to say yes or no to this, but my intention is, opinion is, that this is a good settlement to this matter your Honor." Rhonda's counsel then examined her. The following is a partial record of that examination:
 {¶ 21} "Q: Today in court Mr. Willen read an agreement that was entered between the parties after several hours of negotiation both today and on other days. Did you hear that agreement read to the court?
 {¶ 22} "A: Yes.
 {¶ 23} Q: Did you participate in the discussion and negotiations which led to the terms and conditions of that agreement as stated by Mr. Willen in the record here today?
 {¶ 24} "A: Yes.
 {¶ 25} "Q: Are you satisfied with that agreement?
 {¶ 26} "A: No.
 {¶ 27} "Q: Do you wish the court to approve that agreement?
 {¶ 28} "A: I really don't know.
 {¶ 29} Q: Is there any amount of time that we can take for you to consider your thoughts on that matter? *Page 6 
 {¶ 30} "A: I don't know if I'm gonna make it.
 {¶ 31} "The Court: Well I can't speculate on that Mrs. Maury. Like I told you before, you should listen to the advice of your attorney if he's assisted you in negotiations on this matter and if he's recommending that this is a good settlement agreement for you, you might want to take that seriously. As I told you, if you leave it to the court to decide, it may not be the same arrangement that you've negotiated.""
 {¶ 32} Rhonda then discussed why she did not like the proposed settlement and stated that the only reason she would agree to it "is to get rid of this marriage." Counsel asked, "So you're going to agree, and you do agree to the settlement agreement as set forth in this courtroom today as stated by Mr. Willen and as amended by the statements that I made, yes or no?" Rhonda answered this question in the affirmative. Counsel then made sure that Rhonda knew she could not change the agreement once it was entered into. Rhonda stated that she did "not really" want to enter into the agreement knowing this and felt "like everybody's pushing me into it."
 {¶ 33} After hearing all of this, the following took place:
 {¶ 34} "The Court: I assume that Mrs. Maury will be seeking the assistance of, since she disregarded her counsel's advice, Mr. Olivito will probably be seeking leave to withdraw, so this matter will be reassigned for trial next year because she'll have to presumably get a new attorney and I'm not trying anything after the first of November and we are booked in August, September, and I'm saving some time in October for speedy trial criminal cases. After that it's wind down time. So * * *
 {¶ 35} "Mr. Olivito: Your Honor, I believe my client did hear what you said and I don't know what she * * *
 {¶ 36} "Mrs. Maury: Just finish it. There's things that in here that didn't get added.
 {¶ 37} "The Court: Mrs. Maury, I want you to understand. It doesn't matter to me whether you dispose of this case today or next year. I'm just telling you I do not have time after today to reassign this for trial again. We continued it a couple of times as it was and the morning was lost to your unsuccessful negotiations. It's too late in the day to start the trial now and I don't foresee setting this case back in this year. So, it doesn't matter to me *Page 7 
whether you, I don't want you to get the impression the Court is trying to jam the settlement down your throat because the first time I heard about this settlement is when Mr. Willen read it into the record this afternoon, so I'm going to assume you're not comfortable with this and don't want it.
 {¶ 38} "Mrs. Maury: No. Just finish it. It's fine.
 {¶ 39} "The Court: Alright. Then I assume you are satisfied with the agreement as read into the record?
 {¶ 40} "A: Yes."
 {¶ 41} If the parties in Cefaratti and Ingle were not subjected to undue influence, it is difficult to see how we could conclude that Rhonda assented to the settlement agreement because of undue influence. Rhonda was ably assisted by counsel. The court made it clear that it was not trying to force her into a decision she did not want to make. In the end, it appears that Rhonda decided that it was more important to her to end the marriage than to continue with the litigation. Accordingly, there was no reason for the trial court to refuse to accept the agreement because of undue influence.
 {¶ 42} Finally, Rhonda argues that she only entered into the settlement agreement because of Michael's fraudulent failure to disclose that the mobile home which she received in the settlement had been damaged by a water leak. Fraud in the inducement arises when a party is induced to enter into a contract or agreement through fraud or misrepresentation, and the fraud relates not to the nature or purport of the agreement, but to the facts inducing its execution. Haller v. BorrorCorp. (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207. To demonstrate fraud in the inducement, the plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to his or her detriment. ABM Farms, Inc. v.Woods, 81 Ohio St.3d 498, 502, 1998-Ohio-0612.
 {¶ 43} In this case, there is no evidence in the record that Michael made any kind of knowing, material misrepresentation in order to induce her to enter into the settlement agreement. Instead, Rhonda makes these allegations in her motions without any evidentiary support. Accordingly, the court could not have found that Michael obtained *Page 8 
the agreement by fraud without further fact-finding, and the alleged need for further fact-finding is not addressed in these three assignments of error.
 {¶ 44} For all of these reasons, there is no evidence in the record showing that Rhonda entered into the settlement agreement because of some improper actions by Michael, her attorney, or the court. Rhonda's arguments to the contrary are meritless.
 Failure to Hold a Hearing {¶ 45} Although we have concluded that there is no evidence in the record which demonstrates that the trial court erred when adopting the parties' settlement agreement, Rhonda's fourth assignment of error argues that the trial court erred by not holding a hearing so Rhonda could have the opportunity to enter such evidence into the record. That assignment of error argues:
 {¶ 46} "The trial court committed an abuse of discretion and an error of law when it failed to set Plaintiff/Appellant's motion to set aside and motion to vacate for hearing before the trial court approved the final entry while this appeal sat in limbo waiting for the court to set the matter for hearing."
 {¶ 47} A party who wants to disavow a settlement agreement must move to set it aside. Spercel v. Sterling Industries, Inc. (1972),31 Ohio St.2d 36, 40. If such a motion is filed before the trial court orders enforcement of such an agreement, the trial court must hold an evidentiary hearing if the motion legitimately disputes the substance or existence of the purported agreement. Rulli v. Fan Co.,79 Ohio St.3d 374, 376, 1997-Ohio-0380. In the absence of such a dispute, a court is not required to conduct such an evidentiary hearing. Id. at 377. This court reviews a trial court's decision on a motion to set aside a settlement agreement for an abuse of discretion. Dutton v. Dutton
(1998), 127 Ohio App.3d 348.
 {¶ 48} Michael argues that the trial court did not need to hold an evidentiary hearing since Rhonda did not attach any evidentiary material to her motion. However, all of the caselaw he cites, such as Kay v. MarcGlassman, Inc., 76 Ohio St.3d 18, 1996-Ohio-0430, and McBroom v.McBroom, 6th Dist. No. L-03-1027, 2003-Ohio-5198, deal with motions pursuant to Civ. R. 60(B), which are directed to final judgments. *Page 9 
 {¶ 49} A motion to set aside a settlement agreement which has not been accepted and journalized by the trial court is different than a motion pursuant to Civ. R. 60(B) which seeks relief from a final judgment. As the Ohio Supreme recognized in Knapp v. Knapp (1986), 24 Ohio St.3d 141,144, two principles to which courts strive compete with each other for prominence: finality and perfection. "Finality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system's ability to resolve disputes. Perfection requires that every case be litigated until a perfect result is achieved." Id. at 144-145. Courts generally place finality over perfection and Civ. R. 60(B) is an example of how courts have balanced these concerns. Id. at 145. Because of the strong judicial interest in finality, courts have generally encouraged parties to support their Civ. R. 60(B) motions with evidentiary material. See Kay.
 {¶ 50} However, Rhonda's pre-judgment motion to set aside the settlement agreement does not involve the competition between these principles because the trial court had not yet entered a final judgment. Thus, the primary principle which should guide the trial court when it is faced with such a motion is perfection. This is why the Ohio Supreme Court has stated that a trial court needs to hold an evidentiary hearing on such a motion as long as the motion does nothing more than "legitimately dispute" the substance or existence of the purported agreement. Rulli at 376.
 {¶ 51} Of course, this does not mean that a motion containing only a generalized challenge to a settlement agreement will require an evidentiary hearing. In order to legitimately dispute a settlement agreement, the movant must make an argument stating the basis for challenging the settlement agreement with sufficient specificity to put the opposing party on notice of the general evidentiary basis for such a claim. If the motion does not give some indication that the party will be able to produce some evidence which could legitimately challenge the purported settlement agreement, then a trial court need not hold an evidentiary hearing on that issue.
 {¶ 52} In this case, Rhonda did not make a legitimate claim that the settlement should be set aside because of duress because she has failed to allege that the opposing party, her husband, was the cause of the duress. Thus, this claim would not obligate the *Page 10 
trial court to hold an evidentiary hearing.
 {¶ 53} On the other hand, Rhonda does allege facts which could prove that the settlement was obtained by either undue influence or fraud. For example, Rhonda's motion alleges that she has chronic health problems, including depression and anxiety, which made her susceptible to the influence of others. She also alleges that Michael acted fraudulently when entering into the settlement by not disclosing that some of the property she was receiving had been damaged by a water leak.
 {¶ 54} These allegations are specific and call into question whether the parties actually entered into a settlement agreement. By entering judgment without holding an evidentiary hearing on the motion, the trial court "den[ied] the parties' right to control the litigation, and to implicitly adopt (or explicitly, as the trial court did here) the interpretation of one party, rather than enter judgment based upon a mutual agreement." Rulli at 377. Thus, Rhonda's fourth assignment of error is meritorious.
 Conclusion {¶ 55} In conclusion, Rhonda's first three assignments of error are meritless. There is simply no evidence in the record demonstrating that Rhonda entered into the settlement agreement due to duress, undue influence, or fraud. On the other hand, the trial court erred by not holding an evidentiary hearing on Rhonda's pre-judgment motion to set aside the settlement agreement since she alleged facts which show there is a legitimate dispute concerning the existence of the settlement agreement. Accordingly, the judgment of the trial court is reversed and this case is remanded for an evidentiary hearing on Rhonda's motion to set aside the settlement agreement.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1