[Cite as *State ex rel. Smith v. Hayes*, 2014-Ohio-1367.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. KELLY SMITH, | : | **PER CURIAM OPINION** |
| | : | |
| Relator, | | |
| | : | **CASE NO. 2013-P-0089** |
| - vs - | | |
| | : | |
| JERRY L. HAYES, JUDGE, | | |
| | : | |
| Respondent. | | |

Original Action for Writ of Prohibition.

Judgment: Petition dismissed.

*Mary E. Randazzo*, 6555 Dean Memorial Parkway, Boston Heights, OH 44236 (For Relator).

*Victor V. Vigluicci*, Portage County Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Respondents).

Brendan Kohrs, 421 Graham Road, Suite F, Cuyahoga Falls, OH 44221 (Guardian ad litem).

PER CURIAM.

{¶1} This original action is before this court for final consideration of respondent's motion to dismiss the prohibition petition, pursuant to Civ.R. 12(B)(6). Respondent, Judge Jerry L. Hayes of the Portage County Court of Common Pleas, Domestic Relations Division, argues that relator, Kelly Smith, has failed to state a viable claim for the writ because her factual allegations can only be construed to support the

conclusion that he has jurisdiction to rule upon the pending motions in the underlying dissolution case. For the following reasons, the dismissal is warranted.

{¶2} The following statement of facts is based solely upon the allegations in the prohibition petition and accompanying exhibits. Relator and Nathan M. Smith ("Smith") were married for approximately five years and had one child. Even though the couple initially lived in Utah, they ultimately moved to Portage County, Ohio, where Smith was attending dental school with the goal of becoming an anesthesiologist. After the couple mutually decided to terminate their marriage, Smith moved to Pennsylvania for the express purpose of continuing his education.

{¶3} In 2008, Smith and relator filed an action in the Portage County domestic relations court to dissolve the marriage. During that proceeding, Smith was represented by counsel, while relator acted pro se. To facilitate the "dissolution" process, Smith and relator negotiated a separation agreement in which they resolved all issues relating to child custody and visitation, distribution of marital property, and spousal support. This agreement was incorporated into the trial court's final dissolution decree, rendered on July 21, 2008.

{¶4} Regarding Smith's payment of spousal support to relator, the separation agreement provided:

{¶5} "The parties acknowledge that Husband shall pay to Wife the amount of Six Thousand Five Hundred Dollars ($6,500.00) per month beginning January 1, 2013. Husband shall pay to Wife Nine Thousand One Hundred ($9,100.00) per month beginning January 1, 2020 due to Husband's anticipated income. Husband's spousal support obligation shall terminate upon Wife's remarriage only. If Husband shall

2

become disabled, Husband's spousal support obligation will be reduced by one-half."

{¶6} As originally written, the spousal-support term did not have any language pertaining to the trial court's retention of jurisdiction over the issue. However, when the separation agreement was presented to the trial court for review prior to the release of the final decree, the court mandated that the following sentence be added to the term: "This court shall retain jurisdiction over Husband's spousal support obligation." The new sentence was handwritten unto the copy of the agreement attached to the final decree, and both Smith and relator initialed the amendment.

{¶7} Two weeks after the dissolution decree was issued, Smith and relator submitted an agreed judgment entry to the trial court for approval. This entry had been prepared by Smith's counsel, and had already been executed by Smith and relator. The entry stated that, in exchange for mutual promises and consideration, Smith and relator had agreed to modify the separation agreement to provide that the trial court would not retain jurisdiction over the spousal-support issue, and that the support obligation, as set forth in the agreement, would not end until Smith died or relator remarried. On August 4, 2008, the trial court approved the agreed judgment entry.

{¶8} No new proceedings were held in the dissolution action over the next four years. However, when Smith's initial obligation to pay spousal support was scheduled to commence in January 2013, he began to file a series of motions in the trial court. On January 4, 2013 alone, he submitted four motions relating to: (1) the validity of the final dissolution decree; (2) his spousal support obligation; or (3) his right to visitation with, or custody of, the minor child. In his first motion, Smith requested the trial court to vacate the final dissolution decree and all subsequent orders in the case, pursuant to Civ.R.

60(B). In the second, he moved for modification of his spousal support obligation under the separation agreement.

{¶9} Over the next few weeks, Smith filed an additional four motions to vacate the final dissolution decree or the August 4, 2008 agreed judgment entry pertaining to the trial court's continuing jurisdiction over the spousal-support issue. Furthermore, he submitted an amended motion to modify his support obligation and moved to stay his support obligation until the trial court could address the merits of his various motions.

{¶10} On April 16, 2013, Smith filed a brief that discussed the substance of all of his pending motions. In relation to his motions to vacate the final dissolution decree, he contended that: (1) he had been subject to duress from relator during the negotiation of the separation agreement; (2) relator had committed fraud by failing to timely inform him of the extent of her student loans for purposes of determining the total marital debt; and (3) at the outset of the case, relator did not submit a required "parenting" affidavit under R.C. 3127.23. As to his motion to vacate the August 4, 2008 agreed judgment entry, he argued that the amendment of the spousal-support term was unenforceable because he did not receive any consideration in exchange for agreeing that the trial court would not retain jurisdiction over the support issue.

{¶11} Before any hearing could be held on Smith's motions, the sitting domestic relations judge for Portage County issued a judgment stating that she was disqualifying herself from the "Smith" dissolution action. Respondent was assigned by the Ohio Supreme Court to proceed as a visiting judge for the case.

{¶12} In late October 2013, Smith filed a renewed motion to temporarily suspend his spousal support obligation. One day later, relator moved to dismiss each of the four

4

pending motions in which Smith had sought either a stay or modification of the spousal-support term in the separation agreement. Relator maintained that the trial court had no authority to reduce or suspend Smith's support obligation because the August 4, 2008 agreed judgment entry expressly stated that the court would not retain jurisdiction going forward over that particular issue.

{¶13} On the same day relator filed her motion to dismiss, respondent signed an attorney-prepared judgment granting the dismissal of the referenced motions. One day later, respondent rendered a second judgment stating that the issuance of the dismissal judgment had not been intended; accordingly, the dismissal judgment was vacated, and Smith's motions were reinstated.

{¶14} In response to the vacation of the dismissal judgment, relator initiated this separate action for a writ of prohibition. In her petition, she requests the issuance of the writ to enjoin respondent from considering the merits of, or issuing any ruling upon, any motion Smith has filed in the dissolution case, unless the motion directly pertains to the sole minor child. Concerning the question of spousal support, relator again asserts that respondent has no authority to render a new order because the separation agreement was amended to take away the trial court's continuing jurisdiction over that point. As to the question of property distribution, she alleges that respondent cannot issue any new order regarding the allocation of the marital debt because she and Smith never agreed to give the trial court continuing jurisdiction over that point. Last, in regard to Smith's motions to vacate, relator contends that Smith cannot be granted relief from the final dissolution decree because: (1) he is attempting to use the motions as substitutes for a direct appeal from the decree; and (2) none of the motions were timely filed.

5

{¶15} As previously mentioned, respondent has moved to dismiss relator's entire prohibition petition for failing to state a viable claim for relief. In that motion, respondent focuses his argument solely upon Smith's first motion to vacate, filed in the dissolution case on January 4, 2013. Specifically, he notes that the first motion to vacate does not request a modification of the spousal-support term in the separation agreement; rather, it asks for relief from the final dissolution decree pursuant to Civ.R. 60(B). Respondent further notes that the first motion alleges a permissible basis for relief under the rule. In light of this, he submits that he has jurisdiction to proceed on the motion to vacate, and that relator is improperly trying to contest the merits of the motion through a prohibition petition.

{¶16} Relator has not submitted a brief in opposition to the motion to dismiss; as a result, only the legal arguments contained in her prohibition petition can be analyzed in determining whether dismissal is justified under Civ.R. 12(B)(6).

{¶17} In asserting that respondent will exceed the scope of his jurisdiction as a domestic relations judge if he takes any additional steps in the underlying action, relator has referred to two basic types of pending submissions: (1) motions to modify, suspend, or stay the spousal-support term in the separation agreement; and (2) motions to vacate the final dissolution decree or the August 4, 2008 agreed judgment entry. Of these two categories, the jurisdictional analysis as to the first is the most straightforward. Under current Ohio law, the continuing jurisdiction of a domestic relations court over an award of spousal support is governed solely by a statutory provision. R.C. 3105.18(E) states:

{¶18} "(E) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined * * *January 1,

6

1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:

{¶19} "(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.

{¶20} "(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the divorce decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support."

{¶21} In applying R.C. 3105.18(E) in the context of a divorce case, "a trial court has the authority to modify or terminate an order for alimony or spousal support only if the divorce decree contains an express reservation of jurisdiction." *Kimble v. Kimble*, 97 Ohio St.3d 424, syllabus (2002). This court has followed the *Kimble* holding in relation to a post-decree motion to terminate or modify spousal support in a dissolution action. *Thomas v. Thomas*, 159 Ohio App.3d 761, 2004-Ohio-2928, ¶6-7 (11th Dist.). Therefore, a trial court has no continuing authority to alter a spousal-support term in a separation agreement unless the parties have specifically agreed at the time of the dissolution decree to confer that jurisdiction upon the court.

{¶22} In this case, the documents attached to relator's petition demonstrate that she and Smith specifically agreed to *not* confer continuing jurisdiction over the spousal-

7

support issue to the Portage County domestic relations court.  Although the final version of their separation agreement contained a handwritten term stating that the court would retain jurisdiction over Smith's support obligation, that term was expressly rescinded in the August 4, 2008 agreed judgment entry.  According to the judgment entry, relator and Smith had agreed to deny the trial court continuing jurisdiction over the spousal-support issue.  Moreover, the judgment entry was not only signed by both relator and Smith, but was also approved by the trial court.

{¶23}  Thus, pursuant to R.C. 3105.18(E)(2), respondent lacks the authority to go forward at this time on Smith's pending motions to modify/suspend his spousal-support obligation under the separation agreement; i.e., since there was no express reservation of continuing jurisdiction, the requested relief can never be granted.  For this reason, if respondent presently possesses any authority to proceed in the dissolution action, it is limited to the pending motions to vacate under Civ.R. 60(B).  Furthermore, respondent's jurisdiction to decide the 60(B) motions will turn upon whether those motions essentially seek relief which is distinct from that requested in the motions to modify/suspend.

{¶24}  In order for the movant to be entitled to relief from a final judgment under Civ.R. 60(B), he must be able to establish, inter alia, that he can satisfy one of the five possible grounds for relief delineated in the rule.  *Novak v. Novak*, 11th Dist. Lake Nos. 2013-L-047 and 2013-L-063, 2014-Ohio-10, ¶21.  The rule states that a court may grant relief from a final judgment for any of the following reasons: "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other

8

misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; and (5) any other reason justifying relief from the judgment."

{¶25} Of the five listed reasons, parties who have sought relief from a dissolution decree have often tried to invoke the "no longer equitable" clause under 60(B)(4). For example, in *Knapp v. Knapp*, 24 Ohio St.3d 141 (1986), the husband based his request for relief from the alimony term of the separation agreement upon 60(B)(4), making two arguments in support: (1) he could no longer afford to pay the agreed amount because his financial condition had changed; and (2) he did not understand the meaning of the alimony term when he signed the separation agreement. In concluding that neither of the husband's arguments stated justifiable reasons for relief from the dissolution decree, the *Knapp* court emphasized that the "no longer equitable" clause was not intended to encompass possible changes in circumstances that a party could have envisioned prior to executing the separation agreement:

{¶26} "1. The '* * * it is no longer equitable * * *' clause of Civ.R. 60(B)(4) was designed to provide relief to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control.

{¶27} "2. The '* * * it is no longer equitable * * *' clause of Civ.R. 60(B)(4) will not relieve a litigant from the consequences of his voluntary, deliberate choice to enter into a separation agreement in a dissolution of marriage proceeding." *Id.* at syllabus.

{¶28} The underlying logic of the *Knapp* analysis was recently explained by the Eighth Appellate District in *Harper v. Harper*, 8th Dist. Cuyahoga No. 96454, 2011-Ohio-

9

5276, ¶11:

{¶29} "We reiterated this holding in *Pumper v. Pumper*, Cuyahoga App. No. 93916, 2010-Ohio-4131. Citing *Knapp*, we noted that, 'when a party voluntarily enters into a separation agreement, the party is bound by the terms of that agreement, even if the party's financial circumstances change.' Id. at ¶15. 'Indeed, a change in a person's financial situation is always a possibility; therefore, "it is considered a foreseeable event for purposes of Civ.R. 60(B)(4) even if there was no immediate reason to believe the change was about to occur when the judgment was issued."' Id., quoting *Barnes v. Barnes*, 5th Dist. No. 2003CA00383, 2005-Ohio-544. Consistent with *Knapp* * * *, we concluded that, 'a party cannot rely on Civ.R. 60(B)(4) to vacate a settlement agreement due to a change in finances when the party should have considered such a change in negotiating the settlement.' Id. at ¶20."

{¶30} In relation to the "change in financial circumstances" argument, the Third Appellate District has essentially extended the *Knapp* analysis and concluded that such an argument cannot form the basis of a viable motion to vacate under Civ.R. 60(B)(5), the "catchall" provision. *See Jordan v. Jordan*, 3rd Dist. Hancock No. 5-05-07, 2005-Ohio-6028. Similarly, in *Crouser v. Crouser*, 39 Ohio St.3d 177 (1988), the Supreme Court held that a change in the prognosis of the wife's mental/emotional condition was not a viable basis for seeking relief from a spousal-support order under either 60(B)(4) or 60(B)(5).

{¶31} Pursuant to the foregoing precedent, a party to a dissolution proceeding cannot seek Civ.R. 60(B) relief from the separation agreement on the grounds that the occurrence of new events after the decree has rendered the continuing enforcement of

10

the spousal-support obligation unfair. Hence, if the parties to a separation agreement have not afforded the trial court continuing jurisdiction over the spousal-support issue, a 60(B) motion cannot be employed as a separate means of obtaining the modification of the support obligation based upon a change of circumstances. However, this does not mean that there are no instances in which a viable 60(B) motion can be asserted as to a dissolution decree and the accompanying separation agreement. Additional case law establishes that a viable 60(B) motion can be stated when it is predicated upon alleged misconduct or mutual mistake that occurred during the negotiation of the agreement.

{¶32} In *In re Whitman*, 81 Ohio St.3d 239 (1998), the wife sought Civ.R. 60(B) relief regarding the provisions in the separation agreement governing the distribution of the marital property. Specifically, she asserted that her decision to sign the agreement had been based upon a mistake of fact because the "distribution" terms did not dispose of some of the marital assets. Even though the primary focus of the Supreme Court's analysis concerned whether the entire dissolution decree must be vacated as a result of a material mistake of fact as to terms of the separation agreement, the opinion contains a considerable discussion of the legal underpinnings of dissolution law. Specifically, the *Whitman* court noted that each party to the action must freely consent to the separation agreement before the dissolution of the marriage can be granted. *Id.* at 241. In light of this essential requirement, the court then stated:

{¶33} "But if consent or mutuality did not exist when the parties entered into the separation agreement because of fraud or mutual mistake or misrepresentation, then there was no agreement upon which the dissolution decree could have been based. This lack of mutuality undermines the integrity of the dissolution proceeding and may

11

constitute sufficient grounds to set aside the decree under Civ.R. 60(B). *In re Murphy* (1983), 10 Ohio App.3d 134, * * *." *Id.* at 241-242.

{¶34} Citing the foregoing language from *Whitman*, subsequent appellate courts have upheld the use of Civ.R. 60(B)(1), (B)(2), and (B)(3) to vacate a dissolution decree when the separation agreement was not based upon mutual consent. For example, in *Nardecchia v. Nardecchia*, 155 Ohio App.3dd 40, 2003-Ohio-5410, the wife moved for Civ.R. 60(B) relief on the basis that, in negotiating the distribution of the marital assets, the parties had mistakenly undervalued the husband's retirement account. Although the trial court denied the wife's motion, the Second Appellate District reversed that ruling on the grounds that the wife satisfied all three requirements for 60(B) relief. *Id.* at ¶17. As to the justification for vacating the separation agreement, the *Nardecchia* court held that incomplete financial disclosure had caused a mistake of fact concerning the retirement account which warranted relief under 60(B)(1). *Id.* at ¶14-17. The court also held that, since the separation agreement did not contain a term granting the trial court continuing jurisdiction to modify the marital property distribution, the entire dissolution decree had to be vacated. *Id.* at ¶14.

{¶35} This court has expressly upheld the granting of 60(B) relief in a dissolution case when the evidence demonstrated that fraud had occurred during the negotiation of various provisions in the separation agreement, including spousal support. In *Cefaratti v. Cefaratti*, 11th Dist. Lake No 2004-L-091, 2005-Ohio-6895, the separation agreement was prepared solely by the husband, and he specifically told the wife that there was no need for her to hire an attorney to represent her in the dissolution action. The evidence further established that the husband's income was twelve times greater than that of the

wife, and that he made representations to her regarding the "nonexistence" of spousal support. Based upon these facts, this court concluded that there had been fraud in the inducement, and that relief from the dissolution decree was justified under 60(B)(3). *Id.* at ¶29-32.

**{¶36}** Therefore, under present Ohio law, a Civ.R. 60(B) motion can be brought to contest the validity of a party's consent to the provisions of the separation agreement, including the spousal-support term. In addition to a claim of material mistake of fact, the 60(B) motion can be predicated upon claims of fraud, duress, or undue influence. *Id.* at ¶15, quoting *DiPietro v. DiPietro*, 10 Ohio App.3d 44, 47 (1983).

**{¶37}** In this case, the documents attached to relator's prohibition petition shows that Smith filed five separate motions to vacate in January 2013. Three months later, in April 2013, he submitted a brief in support of the five motions, in which he raised seven basic arguments for review. Of the seven arguments, two clearly assert potential claims for relief under Civ.R. 60(B). First, Smith maintained that, during the negotiation of the settlement agreement, relator had taken advantage of his unstable mental condition and subjected him to duress. Second, he alleged that relator had engaged in fraud by not informing him of the extent of her student loans for purposes of calculating the total debt he could owe on her behalf.

**{¶38}** In these two arguments, Smith is not requesting respondent to modify his spousal-support obligation on the basis of events that have occurred subsequent to the issuance of the dissolution decree and the August 4, 2008 agreed judgment entry; thus, he is not attempting to invoke Civ.R. 60(B)(4) or (B)(5). Instead, Smith is attacking the validity of the entire separation agreement through allegations of duress and fraud, as is

permissible under Civ.R. 60(B)(1) and (B)(3). Given that Smith has raised at least two viable claims for 60(B) relief, respondent has the authority to address the substance of the two arguments as asserted in the pending motions to vacate.

{¶39} As to Smith's remaining five arguments, the copy of his April 2013 brief in support, as attached to the prohibition petition, indicates that none of these arguments constitute veiled attempts to obtain the modification of the spousal-support obligation. Rather, each of the five arguments challenges the propriety of the trial court's decision to issue the final dissolution decree and the August 4, 2008 agreed judgment entry. As noted above, under one of his remaining arguments, Smith contends that the trial court lacked the necessary jurisdiction to render the decree because relator never submitted a "parenting" affidavit, as mandated under R.C. 3127.23. Given that none of the five remaining arguments directly pertain to the spousal-support issue, respondent clearly has the authority to make an initial determination as to whether each argument states a viable reason for vacating either judgment, and then, depending upon the outcome of that initial analysis, proceed to address the final merits of each.

{¶40} In her prohibition petition, relator maintains that respondent should not be allowed to go forward on Smith's motions to vacate because: (1) none of the motions were timely filed, as expressly required under Civ.R. 60(B); and (2) Smith is attempting to use the motions as a substitute for a timely direct appeal from the dissolution decree or the agreed judgment entry. However, while each of these two points *may* constitute a viable counter-argument to the motions to vacate, neither of the points is relevant to the issue of respondent's jurisdiction to determine the merits of those motions. Thus, by raising these points, relator is essentially using this original action as a separate means

14

for contesting the merits of the motions.  Such a use is not permissible, since an action in prohibition can only be employed to challenge the jurisdiction of a lower court.  *See State ex rel. Kister-Welty v. Hague*, 160 Ohio App.3d 486, 2005-Ohio-1788, ¶14, 17.

{¶41}  "As a general proposition, * * * a prohibition claim can be subject to dismissal under Civ.R. 12(B)(6) when the nature of the relator's allegations are such that, even if the allegations are presumed true and interpreted in a manner most favorable to [her], it would still be beyond doubt that [she] will not be able to prove a set of facts entitling [her] to the writ."  *State ex rel. Feathers v. Gansheimer*, 11th Dist. Ashtabula No. 2006-A-2858, 2007-Ohio-2858, ¶6.  Under this standard, a relator will be permitted to go forward on her prohibition claim only when her allegations are sufficient to satisfy the three required elements for the writ: (1) respondent intends to exercise his judicial authority in the underlying case; (2) the proposed use of judicial power is beyond the scope of respondent's jurisdiction; and (3) if the writ is not granted, the relator will be subject to damages for which there is no adequate remedy at law.  *Kister-Welty*, at ¶24, citing *State ex rel. Barclays Bank PLC v. Ct of Common Pleas of Hamilton Cty.*, 74 Ohio St.3d 536, 540 (1995).

{¶42}  Pursuant to the foregoing discussion, this court concludes that relator will never be able to prove a set of facts under which the second element for a prohibition claim will be satisfied.  Even though respondent does not have any authority to suspend or modify Smith's spousal-support obligation while the separation agreement remains in effect, he does have the jurisdiction to issue judgments on Smith's pending motions to vacate under Civ.R. 60(B).  This authority to proceed exists notwithstanding the fact that the Portage County domestic relations court did not retain continuing jurisdiction over

15

the issues of spousal support and property distribution. Accordingly, since relator's own factual allegations are legally insufficient to establish a complete lack of jurisdiction to go forward in the underlying dissolution action, she has failed to state a viable claim for a writ of prohibition.

{¶43} Respondent's motion to dismiss the prohibition petition is granted. It is the judgment and order of this court that relator's entire prohibition petition is dismissed in its entirety. It is further ordered that Nathan M. Smith's motion to intervene in this action is overruled as moot.


TIMOTHY P. CANNON, P.J., CYNTHIA WESTCOTT RICE, J., THOMAS R. WRIGHT, J., concur.